RESTRICTED – ATTORNEYS' EYES ONLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 13-2108-RGA ) |
| LENOVO HOLDING CO. INC., and LENOVO (UNITED STATES) INC., | ) **JURY TRIAL DEMANDED** ) ) |
| Defendants. | ) **REDACTED PUBLIC VERSION** ) |
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 13-2109-RGA ) |
| LG ELECTRONICS, INC., LG ELECTRONICS U.S.A., INC., LG DISPLAY CO., LTD., and LG DISPLAY AMERICA, INC., | ) **JURY TRIAL DEMANDED** ) ) **REDACTED PUBLIC VERSION** ) ) |
| Defendants. | ) |
| DELAWARE DISPLAY GROUP LLC AND INNOVATIVE DISPLAY TECHNOLOGIES LLC, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C.A. No. 13-2112-RGA ) |
| VIZIO, INC., et al. | ) **JURY TRIAL DEMANDED** ) ) |
| Defendant. | ) **REDACTED PUBLIC VERSION** |

**DEFENDANTS' MOTION TO COMPEL
COMPLIANCE WITH SUBPOENAS ISSUED TO
RAMBUS, INC. AND RAMBUS DELAWARE LLC**

RESTRICTED – ATTORNEYS' EYES ONLY

## <u>TABLE OF CONTENTS</u>

I.    STATEMENT OF THE FACTS AND NATURE AND STAGE OF PROCEEDINGS............2

II.   ARGUMENT......................................................................................................................4

      A.    Rambus' Supplemental Privilege Log Shows that Rambus is Improperly
           Withholding Non-Privileged Teardown Reports ......................................................4

      B.    Rambus Has Inappropriately Redacted Confidential, Non-Privileged, Information
           from Royalty Reports ............................................................................................10

      C.    Rambus' Refusal to Produce E-mail Communications Between Acacia, Rambus,
           and Plaintiffs Post-Dating 2013 ...........................................................................12

      D.    Defendants Request For Expedited Briefing Schedule ..........................................13

III.  CONCLUSION ................................................................................................................13

RESTRICTED – ATTORNEYS' EYES ONLY

## TABLE OF AUTHORITIES

**Cases**

*Bogosian v. Gulf Oil Corp.*,
738 F.2d 587 (3d Cir. 1984)...........................................................................................9

*CIF Licensing, LLC v. Agere Sys. LLC*,
No. 07-170-LPS, 2012 U.S. Dist. LEXIS 173583 (D. Del. Dec. 3, 2012).......................6

*Hickman v. Taylor*,
329 U.S. 495 (1947) ......................................................................................................7

*Invidi Technologies Corp. v. Visible World, Inc.*,
C.A. 11-397-RGA-CJB, Slip Op. (D. Del. March 11, 2013) ..........................................6

*Invista N. Am. S.A.R.L. v. M&G USA Corp.*,
No. 1:11-cv-1007-SLR-CJB (D. Del. Oct. 17, 2013) (D.I. 503).....................................6

*Kline v. Gulf Ins. Co.*,
2001 U.S. Dist. LEXIS 20603 (W.D. Mich. Nov. 26, 2001) ..........................................7

*Koch Materials Co. v. Shore Slurry Seal, Inc.*,
208 F.R.D. 109 (D.N.J. 2002) .......................................................................................9

*Leader Techs., Inc. v. Facebook, Inc.*,
719 F. Supp. 2d 373 (D. Del. 2010)...............................................................................6

*Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*,
886 F. Supp. 2d 466 (D. Del. 2012) ..............................................................................9

*Microsoft Corp. v. Acacia Research Corp.*,
No. 13-cv-8275-PAC, Slip Op. (S.D.N.Y. Nov. 17, 2014)..............................................6

*Resolution Trust Corp. v. Dabney*,
73 F.3d 262 (10th Cir. 1995)..........................................................................................9

*Shire Dev., Inc. v. Cadila Healthcare Ltd.*,
C.A. No. 10-581-KAJ, 2012 U.S. Dist. LEXIS 158046 (D. Del. June 12, 2012) ............5

*Systems America, Inc. v. Tyagi*,
1997 WL 35386736 (D. Del. Feb. 20, 1997) ..................................................................8

*Upjohn Co. v. U.S.*,
449 U.S. 383 (1981) ......................................................................................................5

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(3). .......................................................................................... 7, 8-9

Fed. R. Civ. P. 26(b)(3)(a)(ii). .......................................................................................10

Fed. R. Civ. P. 45 ..........................................................................................................12

**RESTRICTED – ATTORNEYS' EYES ONLY**

Delaware Display Group LLC ("DDG") and Innovative Display Technologies LLC ("IDT") (collectively, "Plaintiffs"), subsidiaries of Acacia Research Corporation and Acacia Research Group LLC (collectively, "Acacia"), brought patent infringement lawsuits against Lenovo Holding Co. Inc., Lenovo (United States), Inc., LG Electronics Inc., LG Electronics U.S.A., Inc., LG Display Co., Ltd., LG Display America, Inc., and VIZIO, Inc. (collectively, "Defendants") in the United States District Court for the District of Delaware.[1]  On July 9, 2015, Defendants served subpoenas for the production of documents on Rambus Delaware LLC and Rambus Inc. (collectively, "Rambus") pursuant to Rule 45 of the Federal Rules of Civil Procedure.  Rambus is the former owner of the Patents-in-Suit,[2] and holds a contractual right to a certain percentage of proceeds that Plaintiffs receive through licensing or litigation of the Patents-in-Suit.  As a former purchaser, seller, and attempted licensor of those patents, Rambus holds documents relevant and important to this case.  Furthermore, ███████████████████████████████████████████████████ ███████████ ████████████████████████████████████████ ██████████████████████████████████  Defendants bring this motion to compel production of (1) documents relating to the teardowns that Rambus has inappropriately withheld on the basis of attorney-client, work product, and/or common interest privileges; (2) Distribution of Royalty reports that Rambus improperly redacted based on confidentiality, not privilege; and (3) email communications between Acacia, Rambus and/or Plaintiffs from 2013 to the present.

Counsel for Defendants and Rambus have met and conferred multiple times on Rambus' document productions and privilege logs, including on September 22 and October 21, but the

---

[1] Per the Scheduling Order, discovery can be jointly sought in the related cases, Case Nos. 13-cv-02108-RGA (D. Del.), 13-cv-02109-RGA (D. Del.), and 13-cv-2112-RGA (D. Del.).

[2] The Patents-in-Suit include U.S. Patent Nos. 7,537,370 (the "'370 patent), 7,914,196 (the "'196 patent), 7,434,974 (the "'974 patent), and 8,215,816 (the "'816 patent").  On October 21, 2015, Plaintiffs agreed to dismiss U.S. Patent Nos. 7,384,177, 7,434,973, and 7,404,660 without prejudice.  (D.I. 124).

RESTRICTED – ATTORNEYS' EYES ONLY

parties remain at an impasse on the three issues identified above.  Adding to the exigency of the proceedings, fact discovery closes on December 4, 2015.  Although Defendants have diligently pursued this discovery since July 9, 2015, the rapidly approaching discovery cut-off requires Defendants to seek the Court's intervention, and to request a shortened briefing schedule on this motion.[3]

## I.    STATEMENT OF THE FACTS AND NATURE AND STAGE OF PROCEEDINGS

The Patents-in-Suit all relate to light emitting panel assemblies.  Rambus is the former owner of the Patents-in-Suit, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See*

Declaration of Benjamin J. Schladweiler ("Schladweiler Decl.") at ¶ 3. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.*, Ex. 1.

Rambus Delaware LLC sold the Patents-in-Suit to Acacia Research Group LLC on January 30, 2013.  *See id.* at ¶ 4, Ex. 2. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮.[4]  *Id.* ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] This Court is the appropriate venue to hear this motion.  Both Rambus Delaware LLC and Rambus Inc. are Delaware entities, and as such, reside here in Delaware.  Both subpoenas also issued from this Court.  Federal Rule of Civil Procedure 45(c)(2)(A) explains that the place of compliance for document subpoenas can be within 100 miles "of where a person resides."  According to Federal Rule of Civil Procedure 45(d)(2), the party serving a subpoena "may move the court for the district where compliance is required for an order compelling production."

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

**RESTRICTED – ATTORNEYS' EYES ONLY**

█████████████████████████████████████ ██████████

█████████████████████████████████████████

██████      *See id*. at ¶ 5, Ex. 3.  While Rambus produced the █████████████

████████████████      it has refused to produce any teardown reports

generated after the ████████████████████ claiming that those reports, ███████

████████████████████████████      are protected by the

attorney-client privilege, the common interest privilege and the work product doctrine.  *See id*.,

¶¶ 3 and 10, Ex. 10 at 2, Ex. 7 (entries RAMHDINT00227126-227288, RAMHDINT00227650-

262936, and PHYSDEVAC001-93).

Plaintiff IDT was formed on March 13, 2013, less than two weeks before████████████

████████████████      *See* Schladweiler Decl., Exs. 11, 3.  Plaintiffs assert that Acacia

subsequently "assigned all of the right, title, and interest in the" Patents-in-Suit to IDT on July 26,

2013.  D.I. 1 in C.A. 13-2109 at ¶ 22.  IDT, in turn, allegedly assigned "all of the right, title, and

interest in the" '196 Patent to Plaintiff DDG on December 20, 2013, one day after DDG was formed.

*Id*. at ¶ 23; Schladweiler Decl., Ex. 12.  Several weeks later, on December 31, 2013, Plaintiffs sued

Defendants alleging infringement of the Patents-in-Suit in the District of Delaware.  D.I. 1 in

C.A. Nos. 13-2108, 13-2109, 13-2112.  Therefore, it is clear that Acacia did not anticipate that it

would be involved in any infringement action concerning the Patents-in-Suit when it signed the

████████████████████████████      as by that date it already set in motion its plan to

create the Plaintiff entities and to assign its patents over to those entities for enforcement.[5]

---

████████████████████████████████████████ *id*. at
RMBSDEL0069504.

[5] In a previous case, Rambus' 30(b)(6) designee, Laura Stark, testified that Rambus never
anticipated litigation over the Patents-in-Suit during or before March 2013.  *See In re Third
Party Subpoenas Issued to Rambus, Inc. and Rambus Delaware, LLC*, No. 14-mc-80293-EJD,
Slip Op. at 3 (N.D. Cal. Dec. 5, 2014) (attached hereto as Exhibit A).

RESTRICTED – ATTORNEYS' EYES ONLY

On July 9, 2015, Defendants served Rule 45 subpoenas on Rambus Delaware LLC, a Delaware limited liability company, and Rambus, Inc., a Delaware corporation, for the production of documents and things.  *See* Schladweiler Decl. at ¶¶ 7 and 8, Exs. 4, 5.  Both subpoenas seek documents highly relevant to the claims and defenses in this litigation, including non-infringement and the laches and estoppel defenses.

In response to the subpoenas, Rambus produced documents on August 21 and October 2, 2015, and served a Privilege Log on October 2, 2015 and a Supplemental Privilege Log on October 15, 2015 (collectively, the "privilege logs").  Schladweiler Decl. at ¶¶ 8-10.  The privilege logs improperly claim attorney-client, work product, and/or common interest privilege over documents relating to the teardowns performed by Rambus.  Additionally, Rambus' document production did not contain any emails, or unredacted versions of certain royalty reports relating to the Patents-in-Suit.  The parties remain at an impasse on these issues.

## II.   ARGUMENT

### A.   Rambus' Supplemental Privilege Log Shows that Rambus is Improperly Withholding Non-Privileged Teardown Reports

Rambus improperly claims that all teardown reports dated after ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉ are protected from disclosure under the attorney-client, work product, and common interest privileges.  Schladweiler Decl. at ¶ 10, Ex. 7 (Entries RAMHDINT00227126 – 227288, RAMHDINT00227650 – 262936, and PHYSDEVAC001 – 93).  Rambus does not have any legitimate basis for asserting that these reports are privileged.

First, the reports contain only non-privileged factual and technical information. Specifically, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Rambus to perform the following services:

1) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

[REDACTED]

[REDACTED] In other words, the information that Rambus is withholding consists of [REDACTED]

[REDACTED] *See id*., Ex. 7 at RAMHDINT00227126-227288, RAMHDINT00227650-262936, PHYSDEVAC001-93 [REDACTED]

[REDACTED] An example of this factual information is attached hereto as Exhibit 1 to the Schladweiler Declaration. [REDACTED]

[REDACTED] In the various meet and confers, Rambus' counsel indicated that [REDACTED]

[REDACTED][6] Pure factual and technical information such as this is not privileged. *Shire Dev., Inc. v. Cadila Healthcare Ltd*., Civil Action No. 10-581-KAJ, 2012 U.S. Dist. LEXIS 158046, at *19-28 (D. Del. June 12, 2012) ("[M]any of the redactions in these four log entries simply reproduce technical data and test results. These redactions are not privileged and must be produced."); *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney").

---

[6] [REDACTED]

RESTRICTED – ATTORNEYS' EYES ONLY

Second, it is undisputed that these teardown reports were shared with Acacia, a third party as claimed by both Acacia and Plaintiffs throughout this lawsuit. *See* Schladweiler Decl., Ex. 10 at 2. Thus, Rambus has waived any alleged attorney-client privilege.

The common interest privilege is also inapplicable. For a communication to be protected under the common interest privilege, the interests of the parties must be "'**identical**, not similar, and be **legal**, **not solely commercial**.'" *Leader Techs., Inc. v. Facebook, Inc.*, 719 F. Supp. 2d 373, 376 (D. Del. 2010) (emphasis added); *see also CIF Licensing, LLC v. Agere Sys. LLC*, No. 07-170-LPS, 2012 U.S. Dist. LEXIS 173583, at *22 (D. Del. Dec. 3, 2012) (noting legal interests must be at least "substantially similar").[7] Important to this inquiry is whether the party asserting the privilege has "any continued rights in the patent." *Invidi Technologies Corp. v. Visible World, Inc.*, C.A. 11-397-RGA-CJB, Slip Op. at 20 (D. Del. March 11, 2013). As the Southern District of New York held in a prior case, Rambus has not retained any legal interest in the Patents-in-Suit and did not take part in any of the legal strategy relating to the litigation. *Microsoft Corp. v. Acacia Research Corp.*, No. 13-cv-8275-PAC, Slip Op. at 4-5 (S.D.N.Y. Nov. 17, 2014) (attached hereto as Exhibit B) (rejecting Acacia's common interest claims between it and patent sellers); *see also* Schladweiler Decl., Ex. 1 (Sale Agreement), §1.1 (granting Acacia "the entire right, title, and interest in and to the [Patents-in-Suit]), §6.1 (granting Acacia the "sole" right to "institute enforcement actions" and "direct the litigation"). Thus, at most, Rambus and Acacia share a **commercial** interest related to ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, to which the common interest privilege does not attach. *See Leader Techs.*, 719 F. Supp. 2d at 376; *see also*

---

[7] The burden is on Rambus to establish the common interest privilege by showing that "(1) the communications at issue are made by separate parties in the course of a matter of common legal interest; (2) the communications are designed to further that common legal interest; and (3) the privilege has not been waived." *Invista N. Am. S.A.R.L. v. M&G USA Corp.*, No. 1:11-cv-1007-SLR-CJB (D. Del. Oct. 17, 2013) (D.I. 503).

*In re Rivastigmine Patent Litig.*, 2005 WL 2319005, at *4 (S.D.N.Y. Sept. 22, 2005) (finding no common interest where the patent rights of the assignor "were extinguished, even though they continued to have rights to royalties"). This conclusion is supported by █████████ ██████ ███████████████████████████████████████████ ████████████████████████████████████ Schladweiler Decl., Ex. 3 at RMBSDEL0077858.

 The work product doctrine also does not apply to these documents. In order for that doctrine to apply, the documents must have two characteristics: (1) they must be "prepared in anticipation of litigation or for trial," and (2) they must be prepared "by or for another party or by that other party's representative." Fed. R. Civ. P. 26(b)(3).[8] Neither Rambus nor Acacia anticipated involvement in infringement litigation concerning the Patents-in-Suit when the teardown reports were generated. At the time ██████████████████████████████ ████████ Acacia did not anticipate that it would itself be involved in any litigation, as it already set in motion its plan to create the Plaintiff entities and assign the Patents-in-Suit over to those entities for enforcement (see page 4, *supra*). Similarly, Rambus did not anticipate being involved in any litigation because it no longer had any legal interest in the Patents-in-Suit or any right to be involved in any litigation strategy concerning the Patents-in-Suit. *See Kline v. Gulf Ins. Co.*, 2001 U.S. Dist. LEXIS 20603, at *5 (W.D. Mich. Nov. 26, 2001) (holding that a non-party could not claim work product on documents generated during another litigation because the documents were not generated in anticipation of the underlying litigation).

---

[8] Work product as it relates to tangible discovery, such as the documents at issue here, is governed by Fed. R. Civ. P. 26(b)(3), whereas intangible discovery, such as deposition testimony, is governed by the standard set forth in *Hickman v. Taylor*, 329 U.S. 495 (1947).

RESTRICTED – ATTORNEYS' EYES ONLY

Rambus argues that the reports are protected by the work product privilege because they were prepared by Rambus ████████████████████████████████████[9] *See* Schladweiler Decl., Ex. 7.  However, "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3)."  *Systems America, Inc. v. Tyagi*, 1997 WL 35386736, at *2 (D. Del. Feb. 20, 1997) (quoting  Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024, at 354); *see also In re California Public Utilities Com'n*, 892 F.2d 778, 781 (9th Cir. 1989) (Rule 26(b)(3), "on its face, limits its protection to one who is a party (or a party's representative) to the litigation in which discovery is sought").  Thus, even assuming Rambus or Acacia did anticipate litigation after ██████████████████████████████████[10] Rambus or Acacia cannot claim that the tear down reports are work product because, as they have made abundantly clear, they are **not** parties to the current litigation.  *See* Schladweiler Decl., Ex. 10 at (Rambus describing itself as "a non-party to this lawsuit"); *id*., Ex. 13 at 2 Plaintiffs' Objections and Responses to LG Display's Third Set of Interrogatories (Plaintiffs objecting to inclusion of "Acacia Research Group LLC" and "Acacia Research Corporation" in the definition of "Plaintiffs" because "these entities are separate and distinct from Plaintiffs" and their "knowledge" is "not attributable to Plaintiffs").

In addition, the doctrine protects only materials containing counsel's mental impressions, strategies and thought processes made in anticipation of litigation.  *See* Fed. R. Civ. P. Rule

---

[9] While Mr. Lucas is an attorney, it is clear he did not request the reports in his capacity as counsel, but rather as Senior Vice President at Acacia.  Indeed, Rambus generated the reports in the course of ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████  Schladweiler Decl., Ex. 3 at RMBSDEL0077863 ("Description of Services").

[10] Another court previously found that Rambus never contemplated litigation involving the Patents-in-Suit prior to March 25, 2013, and thus Rambus cannot claim work product for documents generated prior to that date.  *See In re Third Party Subpoenas Issued to Rambus, Inc. and Rambus Delaware, LLC*, No. 14-mc-80293-EJD, Ex. A at 3-4 (N.D. Cal. Dec. 5, 2014).

RESTRICTED – ATTORNEYS' EYES ONLY

26(b)(3); *Magnetar Techs. Corp. v. Six Flags Theme Park Inc.*, 886 F. Supp. 2d 466, 478 (D. Del. 2012) (stating that the purpose of the work product doctrine is to protect "the confidentiality of documents, records and materials which contain counsel's mental impressions, strategies and thought processes made in anticipation of litigation").  It does not protect bare facts, such as the

█████████████████████████████████████████████████ at issue here.  *See*

*Bogosian v. Gulf Oil Corp.*, 738 F.2d 587, 595 (3d Cir. 1984) ("Of course, where the same document contains both facts and legal theories of the attorney, the adversary party is entitled to discovery of the facts."); *Koch Materials Co. v. Shore Slurry Seal, Inc.*, 208 F.R.D. 109, 121-22 (D.N.J. 2002) (information in spreadsheets gathered at attorney's request was not protected by work product doctrine); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within the work product.").

Even if the work product doctrine did apply, which it does not, it is clear that the teardown reports do not contain any opinion work product, and Rambus has failed to argue otherwise.  *See, e.g.*, Schladweiler Decl., Ex. 1. ███████████████████████████████

███████████████████████████████████████████████

██████████████ *Id.*, Ex. 10 at 2.  Importantly, ██████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████████

█████████████████████ In other words, the reports reveal nothing about the mental

impressions of counsel; ████████████████████████████████████████

████████████████████████ *See, e.g.*, id., Ex. 1. Therefore, even if the work product doctrine

applies, the factual information contained in the reports would nevertheless be discoverable upon

a showing of substantial need and undue hardship. Fed. R. Civ. P. 26(b)(3)(a)(ii).

Defendants have a substantial need for the information contained in the reports. The

reports are highly relevant because they contain factual information about Defendants' products

as they relate to the Patents-in-Suit. Defendants are also unable to obtain the information

without undue hardship. ████████████████████████████████████████████

██ only available from Rambus, Acacia, or Plaintiffs. However, Rambus, Acacia, and Plaintiffs

have refused to produce this highly relevant information. Indeed, Rambus admits in its October

29, 2015 letter that "Acacia and/or its subsidiaries" consider "the documents in this disputed

category work product," indicating that Rambus, Acacia, and Plaintiffs are unwilling to provide

Defendants with this factual information. *See* Schladweiler Decl., Ex. 10 at 2-3; *see also In re*

*Vitamins Antitrust Litig.*, 211 F.R.D. 1, 4 (D.D.C. 2002) (finding undue hardship where the

person possessing the materials refused to respond to discovery requests).

For all these reasons, Defendants request that the Court compel Rambus to produce the

post-March 25, 2013 teardown reports that have been improperly withheld based on claims of

attorney-client, common interest, and work product privileges.

### B. Rambus Has Inappropriately Redacted Confidential, Non-Privileged, Information from Royalty Reports

Rambus refuses to produce unredacted versions of the quarterly Distribution of Royalty

reports it received from Plaintiff IDT relating to the Patents-in-Suit. *See* Schladweiler Decl. at

¶ 11, Ex. 8, Ex.6 (Production Nos. RMBSDEL0118374 – 77, RMBSDEL0118378 – 85,

RMBSDEL0118386 – 89). An example of such a report is attached hereto as Exhibit 8 to the

Schladweiler Declaration. Defendants believe the redactions concern payments made by Acacia

to its outside counsel.  This information is relevant to damages and fees, and could reveal the value Acacia placed on the patents and this litigation.

It is unclear what the basis is for Rambus' redactions.  During the various meet and confers, Rambus stated that its sole basis for the redactions was not that the information is privileged, but rather that the redacted material is Acacia's confidential information.  *See* Schladweiler Decl. ¶ 12.  Confidential material cannot be withheld from production unless the information is otherwise privileged.  Moreover, this Court entered a Protective Order which properly safeguards against the disclosure of non-party confidential information through the use of the "RESTRICTED – ATTORNEYS' EYES ONLY" designation.  D.I. 59 at ¶ 20 ("To the extent that discovery or testimony is taken of Third Parties, the Third Parties may designate as "CONFIDENTIAL" or "RESTRICTED – ATTORNEYS' EYES ONLY" any documents, information or other material, in whole or in part, produced or given by such Third Parties").

In its October 29, 2015 letter, Rambus alluded to some vague "underlying privilege/protection" that somehow makes these documents "immune from discovery," and in its October 2, 2015 privilege log, Rambus summarily claimed that the redacted information was somehow covered by every privilege (the attorney-client privilege, the common interest privilege, and the work product doctrine).  Schladweiler Decl., Ex. 10 7, Ex. 7.  As discussed above, however, factual information such as the redacted financial information at issue here is not covered by any recognizable privilege, and Rambus has continually failed to show otherwise. Even if a privilege exists, it should be deemed waived, as Rambus has failed to properly explain the basis for its assertions on its log, in its letters, or in the meet and confers.  Thus, Defendants respectfully request the Court compel Rambus to produce the reports in unredacted form.[11]

---

[11] Rambus argues that these documents should be requested from Plaintiffs.  Defendants, however, did request these documents from Plaintiffs, and Plaintiffs have also refused to produce the reports in unredacted form.

**RESTRICTED – ATTORNEYS' EYES ONLY**

### C.    Rambus' Refusal to Produce E-mail Communications Between Acacia, Rambus, and Plaintiffs Post-Dating 2013

Rambus refuses to produce or identify on a privilege log relevant e-mail communications, despite Defendants' specific requests for such documents.[12]  The purported basis for this refusal is (1) the Discovery Order (D.I. 60) agreed upon by the parties in this case limited e-mail production, and (2) Rambus' assertion that production of e-mail is unduly burdensome.  *See* Schladweiler Decl., Ex. 10 at 5-6.  Defendants disagree with both of these positions.  The Discovery Order specifically limits e-mail production for the parties only.  *See* D.I. 60, ¶ 4(b)(iii) ("**The Parties** need not search or produce electronic mail unless a requesting party can show a justifiable need for electronic mail, and it would not be unreasonable or unduly burdensome for the producing party to provide the requested documents.") (emphasis added).  Moreover, the Committee Notes on Fed. R. Civ. P. 45 and the Delaware Default Standard for Discovery are clear that e-mail production is properly sought via subpoena.  *See* Rule 45 Committee Notes ("Rule 45(a)(1)(C) is amended to recognize that electronically stored information, as defined in Rule 34(a), can also be sought by subpoena."); Delaware Default Standard, ¶ 5(b) ("The producing party shall search . . . emails and other ESI . . .").

Rambus' overbreadth objection should also fail.  Defendants have taken steps to mitigate Rambus' burden by agreeing to narrow their requests for e-mail to only those exchanged between Rambus and Acacia and/or Plaintiffs from 2013 to present.  *See* Schladweiler Decl., Ex. 9 at 3.  Rambus has failed to explain how this narrowed request would burden Rambus, other

---

[12] *See, e.g.*, Schladweiler Decl., Ex. 4, July 9, 2015 Document Subpoena to Rambus Delaware LLC, Definition 16 ("The terms "Document" and "Document(s)" shall include electronically stored information…"); Definition 17 ("The term "Communication(s)" means the transmittal of information by any means, and includes any transfer of information, ideas, opinions, or thoughts by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons and/or Entities, but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other Document that was sent by one or more individuals to another or others…").

RESTRICTED – ATTORNEYS' EYES ONLY

than to argue that email communications can "be obtained more easily and with less expense from the parties to the litigations." *See id.*, Ex. 10 at 6-7.  But taking Plaintiffs and Acacia at their word that they are distinct entities, and that discovery concerning one of those entities cannot be obtained from the other, Defendants are unable to obtain communications between Rambus and Acacia from Plaintiffs.  Accordingly, Defendants request that the Court order Rambus to produce or identify on a privilege log all e-mail communications exchanged between Rambus and Acacia and/or Plaintiffs from 2013 to present.

### D.    Defendants Request For Expedited Briefing Schedule

Although Defendants have diligently pursued this discovery since July 9, 2015, the discovery cut-off of December 4, 2015 is a month away.  Defendants have requested, and Rambus has agreed, to produce a witness to testify at a deposition in this matter, but Defendants need to have the documents requested herein before they take Rambus' deposition.  This does not leave much time.  Ordinarily disputes such as this, if between parties, would be resolved using the Court's discovery dispute procedures, in which a dispute is resolved in a matter of days or weeks.  Formal briefing under the Local Rules, however, takes much longer, as a response to a motion is not due until 17 days later.  For these reasons, Defendants respectfully request that Rambus be ordered to respond to this motion within one week, and that Defendants' reply (if needed) be due 3 days thereafter.

## III.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court overrule Rambus' improper assertions of attorney-client, common interest, and work product and order Rambus to produce the withheld documents identified herein before the December 4, 2015 fact discovery cut-off date.  Defendants further request that the Court compel Rambus to produce or identify on a privilege log e-mail communications exchanged between Rambus and Acacia

**RESTRICTED – ATTORNEYS' EYES ONLY**

and/or Plaintiffs from 2013 to present.  Finally, Defendants request that this Court expedite the

briefing on this motion as discussed in Section II.D above.

RESTRICTED – ATTORNEYS' EYES ONLY

## STATEMENT PURSUANT TO LOCAL RULE 7.1.1

Pursuant to Local Rule 7.1.1, I hereby certify that counsel for Defendants discussed the relief requested in the attached motion with counsel for Rambus, and counsel for Rambus indicated it would oppose the motion.

_/s/ Benjamin J. Schladweiler_____

Benjamin J. Schladweiler (#4601)

RESTRICTED – ATTORNEYS' EYES ONLY

Respectfully submitted,

ROSS ARONSTAM & MORITZ LLP

/s/ Benjamin J. Schladweiler
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE  19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com

Counsel for Defendants LG Electronics, Inc.,
LG Electronics U.S.A., Inc., LG Display Co.,
Ltd., and LG Display America, Inc.

POTTER ANDERSON & CORROON LLP

Of Counsel:

Todd E. Landis
Eric J. Klein
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, TX  75201-4624
tlandis@akingump.com
eklein@akingump.com

Fred I. Williams
AKIN GUMP STRAUSS HAUER & FELD LLP
600 Congress Avenue, Suite 1350
Austin, TX  78701-3238
fwilliams@akingump.com

/s/ Stephanie E. O'Byrne
Richard L. Horwitz (#2246)
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Stephanie E. O'Byrne (#4446)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
(302) 984-6000
rhorwitz@potteranderson.com
dmoore@potteranderson.com
bpalapura@potteranderson.com
sobyrne@potteranderson.com

Counsel for Defendants Lenovo Holding Co.
Inc. and Lenovo (United States) Inc.

RESTRICTED – ATTORNEYS' EYES ONLY

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*Of Counsel*:                                     */s/ Pilar G. Kraman*
                                                  Adam W. Poff (#3990)
Jason C. Lo                                       Pilar G. Kraman (#5199)
GIBSON, DUNN & CRUTCHER                           1000 North King Street
333 South Grand Avenue                            Rodney Square
Los Angeles, CA  90071-3197                       Wilmington, DE  19801
JLo@gibsondunn.com                                (302) 571-5600
                                                  apoff@ycst.com
                                                  pkraman@ycst.com

                                                  *Counsel for Defendant VIZIO, Inc.*


Dated: November 4, 2015

## CERTIFICATE OF SERVICE

I, Benjamin J. Schladweiler, hereby certify that on November 4, 2015, I caused the foregoing ***Defendants' Motion to Compel Compliance with Subpoenas Issued to Rambus, Inc. and Rambus Delaware LLC*** to be served via electronic mail upon the following counsel of record:

Joseph J. Farnan, Jr.
Brian E. Farnan
Michael J. Farnan
FARNAN LLP
919 North Market Street
12th Floor
Wilmington, DE  19801
farnan@farnanlaw.com
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Counsel for Plaintiffs Delaware Display Group LLC and Innovative Display Technologies LLC*

Jeffrey R. Bragalone
Patrick J. Conroy
Justin B. Kimble
Daniel F. Olejko
T. William Kennedy, Jr.
Stephanie R. Wood
BRAGALONE CONROY P.C.
Chase Tower
2200 Ross Avenue, Suite 4500W
Dallas, TX  75201
jbragalone@bcpc-law.com
pconroy@bcpc-law.com
jkimble@bcpc-law.com
dolejko@bcpc-law.com
bkennedy@bcpc-law.com
swood@bcpc-law.com

*Counsel for Plaintiffs Delaware Display Group LLC and Innovative Display Technologies LLC*

Andrea L. Gothing
Tara S.G. Sharp
Robins Kaplan LLP
2440 West El Camino Real Suite 100
Mountain View, CA  94040
agothing@robinskaplan.com
tsharp@robinskaplan.com

*Counsel for Rambus, Inc. and Rambus Delaware LLC*

*/s/ Benjamin J. Schladweiler*
Benjamin J. Schladweiler (#4601)

# EXHIBIT A

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

In re: Third Party Subpoenas Issued to
RAMBUS, INC., AND RAMBUS
DELAWARE LLC

INNOVATIVE DISPLAY
TECHNOLOGIES LLC,

        Plaintiff,
        v.
ACER INC., ET AL.,

        Defendants.

Case No. 14-mc-80293 EJD (NC)

**ORDER RE: MOTION TO COMPEL
COMPLIANCE**

 **Re: Dkt. Nos. 1, 32**

      In connection with a patent infringement case, defendant Dell filed a motion to
compel compliance with a subpoena it issued to Rambus.  Dkt. No. 1.  Before the Court is
Rambus' supplemental response to its opposition to Dell's motion.  Dkt. No. 32.  In its first
opposition brief, Rambus sought to withhold certain documents from Dell on the basis that
they were protected by the work-product doctrine and the attorney-client privilege.  Dkt.
No. 14.  This Court held a hearing on Dell's initial subpoena motion, and ordered Rambus
to submit a supplemental opposition brief explaining two issues: (1) why the work-product
doctrine protects a set of documents in Rambus' possession created in or before 2009 and
(2) whether or not the deposition of Laura Stark, Rambus' 30(b)(6) witness, establishes that
the work-product privilege attaches to certain documents dated after September 11, 2012.

1  Shortly after the hearing, Rambus withdrew its claims of work product protection to
2  the first set of documents; thus, the Court need not rule on that issue. But as to the second
3  set of documents, because Rambus' supplemental response fails to explain why this Court
4  should not consider Rambus' 30(b)(6) deponent's statement as evidence that the work-
5  product doctrine fails to apply, the Court grants Dell's motion to compel compliance as to
6  documents created between January 30, 2013 and March 25, 2013.

7  ### I.  Pre-December 2009 Documents

8  As stated above, the parties have resolved this first issue. Rambus stated in its
9  supplemental brief its decision "to withdraw all work product claims for documents . . .
10 with dates prior to December 14, 2009." Dkt. No. 32-4 at 4. Accordingly, Rambus
11 committed to produce these documents—so long as they are not subject to other
12 privileges—to Dell by Friday, November 28, 2014. *Id.*

13 ### II.  Documents Dated After September 11, 2012

14 As to the second issue, Rambus decided to withdraw all work product claims for
15 documents dated on or after September 11, 2012, but before January 30, 2013. *See* Dkt.
16 No. 32-4 at 5. According to Rambus, on January 30, 2013, it signed an agreement to sell
17 patents to another entity, and, shortly afterwards, "began preparing, collecting, and sharing
18 information" with that entity. *Id.* at 6. Rambus allegedly knew that this other entity would
19 engage in patent enforcement litigation. *Id.* 4-6.

20 On its part, Dell dropped its challenge to Rambus' work-product claims for
21 documents dated after March 25, 2013. Dkt. No. 34-6 at 4. On this latter date, Rambus
22 allegedly entered into another consulting agreement, relating to an assignment of patents,
23 with the same entity mentioned above. Dkt. No. 32-4 at 6.

24 In short, the only issue that remains is whether Rambus properly asserts work-
25 product protection over documents created between January 30, 2013 and March 25, 2013.

26 ### A.  Work Product Doctrine

27 The work-product doctrine protects from discovery material obtained and prepared
28 by an attorney or the attorney's agent in anticipation of litigation. Fed. R. Civ. P. 26(b)(3).

To qualify for protection against discovery under Rule 26(b)(3), the documents must have been "prepared in anticipation of litigation" or in preparation for trial. *In re Grand Jury Subpoena, Mark Torf/Torf Envtl. Mgmt. (Torf)*, 357 F.3d 900, 907 (9th Cir. 2004) (citations omitted). The party asserting work product protection bears the initial burden of establishing that the doctrine applies. *U.S. Inspection Svcs. Inc. v. NL Engineered Solutions*, LLC, No. 10-mc-80083 CRB (DMR), 268 F.R.D. 614, 626 (N.D. Cal. 2010).

Here, Rambus' 30(b)(6) designee, Laura Stark, testified in a deposition that Rambus never anticipated litigation over the patents at issue in this case during or before March 2013. Dkt. No. 25-20 at 11-14 (deposition transcript). As Dell correctly states, because Stark was Rambus' 30(b)(6) designee on topics related to "contemplated litigation," Dkt. No. 25-13 at 11 (30(b)(6) subpoena listing topics), her testimony on this issue is binding on Rambus. *See, e.g., LSSi Data Corp. v. Time Warner Cable, Inc.*, 892 F. Supp. 2d 489, 517 (S.D.N.Y. 2012), *quoting A & E Products Group L.P. v. Mainetti USA Inc.*, 2004 U.S. Dist. LEXIS 1510, at *16 (S.D.N.Y. Feb. 4, 2004) ("Testimony of a Rule 30(b)(6) witness is binding on the party that designates the witness.").

Rambus makes no arguments to counter Dell's assertion that Stark's testimony is binding on Rambus. Instead, Rambus asserts that it was around the time of a January 30, 2013 agreement with another entity that it "began preparing, collecting, and sharing information . . .with an eye toward [that entity] exploiting" the patents though litigation. Dkt. 32-4 at 6. This explanation is insufficient to convince the Court why it should not hold Rambus to its 30(b)(6) witness' previous statement. *See Rainey v. American Forest and Paper Association, Inc.*, 26 F. Supp. 2d 82, 94 (D.D.C. 1998) ("Unless it can prove that the information was not known or was inaccessible, a corporation cannot later proffer new or different allegations that could have been made at the time of the 30(b)(6) deposition.").

Because Rambus' 30(b)(6) deponent testified under oath that Rambus did not anticipate litigation as to the patents at issue in this case during or before the March 2013 time period, the Court finds that Rambus cannot claim work product protection over documents dated between January 30, 2013, and March 25, 2013.

1    Therefore, the Court orders Rambus to produce to Dell within seven days documents

2 created between January 30, 2013, and March 25, 2013.

3    Any party may object to this nondispositive order within 14 days under Fed. R. Civ.

4 P. 72.

5    IT IS SO ORDERED.

6    Date:  December 5, 2014

7                                                    _____

8                                                    Nathanael M. Cousins
                                                     United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **EXHIBIT B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MICROSOFT CORPORATION,                    :
                                          :
                    *Plaintiff*,          :
                                          :
        -*against*-                       :
                                          :
ACACIA RESEARCH CORPORATION,              :
                                          :
                    *Defendant*.          :
                                          :
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-17-14

13 cv 8275 (PAC)

**OPINION & ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

Plaintiff Microsoft seeks an order compelling the production of Defendant Acacia's communications with third parties who sold patents to Acacia. Acacia's assertion of the common interest privilege to justify its refusal to produce the requested documents is DENIED. Acacia is directed to comply with Microsoft's discovery request.

**BACKGROUND**

Acacia is a non-practicing entity which purchases patents for subsequent licensing to third parties. As part of its acquisition process, Acacia solicits information regarding possible infringements from the sellers. *See e.g.*, ECF No. 74, Ex. 2 (a patent questionnaire containing the following question: "Does [the patent holder] know of or suspect infringement of these Patents? Who do you think infringes/where/how?"). After the parties sign the patent purchasing contract, a period of due diligence commences. Acacia claims that during this period, it produces various legal documents and legal analyses, which are covered by the attorney-client privilege. Acacia,

however, shares these documents with the patent sellers Acacia is negotiating with. Notwithstanding its disclosure to third party sellers, Acacia argues that its attorney-client privilege remains intact due to the common interest doctrine. Acacia's argument is rejected: disclosures to the patent sellers waives the attorney-client privilege and the common interest doctrine is not applicable to Acacia's commercial relationship with the sellers.

## DISCUSSION

### I.    Legal Standards

"The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *U.S. v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).[1] Typically, disclosing information protected under the attorney-client privilege to third parties waives the privilege. *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973). There is, however, an important exception when third the party recipient shares a common legal interest. To trigger the application of this doctrine and preserve the privilege, the disclosing party must demonstrate that (1) the parties had a common legal, rather than commercial, interest; and (2) the disclosures were made in the course of formulating a common legal strategy. *Schaeffler v. U.S.*, No. 13 CIV. 4864 GWG, 2014 WL 2208057, at *8 (S.D.N.Y. May 28, 2014). The burden of establishing the privilege falls on the party asserting it, *see Doe (In re Grand Jury Proceedings)*, 219 F.3d 175, 182 (2d Cir. 2000), and must be based on "competent evidence, such as affidavits, deposition testimony, or other admissible evidence." *Schaeffler*, 2014 WL 2208057, at *8. Moreover, "the Second Circuit has warned that expansions of the attorney-client privilege under the common

---

[1] See C. Evan Stewart, *Attorney-Client Privilege: Misunderestimated or Misunderstood?*, N.Y. L.J., Oct. 20, 2014, for a convenient, and expert, explanation of the attorney-client privilege.

interest rule should be 'cautiously extended.'" *In re F.T.C.*, No. M18-304 (RJW), 2001 WL 396522, at *4 (quoting *United States v. Weissman*, 195 F.3d 96, 100 (2d Cir. 1999)).

## II. Application

### A. Attorney Client Privilege

Both parties agree that the materials sought in discovery—comprised of draft claim charts and pre-suit analyses—reflect confidential legal advice between Acacia and its legal team. *See In re County of Erie*, 473 F.3d 413, 419 (2d Cir. 2007).

### B. Common Interest Doctrine

Acacia argues that the materials remain privileged, notwithstanding their disclosure to third party sellers, because a common legal interest exists and because the disclosures were made in the course of formulating a common legal strategy. The argument is rejected. Acacia is pursuing its own commercial interest in attempting to ascertain whether the patents at issue are fertile with the possibility of infringement.

Acacia points to (i) the privilege clause contained in each patent sale contract,[2] (ii) the timing of the disclosure, and (iii) the royalty entitlements. The privilege clause, Acacia argues, provides that the disclosure of privileged information between Acacia and the seller "in furtherance of their common legal interest" does not diminish or waive attorney-client privilege. *See* Ex. A, § 8.2. But mere recital is hardly conclusive or compelling on whether such an interest exists. *Schaeffler*, 2014 WL 2208057, at *12.

While the disclosures were made during the due diligence period—after the parties had

---

[2] Ten patent sale contracts are at issue here, which cover Acacia's agreements with the following patent sellers: (1) Silicon Image, Inc.; (2) Rambus Delaware LLC; (3) Borland Software Corporation; (4) Teleshuttle Tech2, LLC; (5) Telecommunication Systems, Inc.; (6) Patent Monryization Accociates, L.P.; (7) Mind's-Eye-View, Inc.; (8) Starnet Communications Corporation; (9) SK Telecom Co. Ltd; and (10) Bluetie, Inc. Acacia's contract with Silicon Image, Inc. ("Ex. A") was provided to the Court and Acacia state that the nine other contracts contain "the identical or substantially similar provisions." ECF No. 98. Acacia's law firm represents the sellers numbered (1) through (7). Not surprisingly, each entity agrees with Acacia's position.

signed an agreement—in reality that timing does not establish a common interest. The disclosures were not contingent on the signed agreement; they were contingent on Acacia finding satisfactory information during the investigation process, otherwise "(i) [Acacia] shall have no payment obligations or liability to [the seller]; and (ii) this Agreement shall automatically terminate upon completion of the Investigation period." Ex. A, § 1.3. Therefore, a common legal interest could only exist after the disclosures were made because that is when the parties' agreement took effect in reality.

Finally, Acacia claims that a common legal interest exists "in licensing or litigation by virtue of being entitled to a portion of future revenues from licensing of those patents." ECF No. 91, 2. While the contracts do provide for royalty payments arising from successful infringement actions, each third party seller assigns to Acacia:

> the entire right, title, and interest in and to the Patents, including without limitation, all rights of [the seller] to sue for past, present, and future infringement of the Patents, including the right to collect and receive any damages, royalties, or settlements for such past, present and future infringements, all rights to seek and obtain injunctive or other equitable relief, and any and all causes of action relating to any of the inventions or discoveries described in the Patents, and all good will in connection with the foregoing.

Ex. A, § 1.1.

The sellers do not retain any legal interest in the patents—let alone a legal interest "common" with Acacia. The royalty entitlements are merely a form of consideration employed by Acacia when purchasing patents. Such entitlements are commercial in nature and do not constitute a legal interest. Accordingly, Acacia has failed to demonstrate a common legal interest with the patent sellers.

Similarly, no common legal strategy existed between the Acacia and the patent sellers. In order to establish a common legal strategy, "'[w]hat is important is not whether the parties

4

theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal.'" *In re F.T.C.*, 2001 WL 396522, at *3 (quoting *North River Insurance Co. v. Columbia Casualty Co.*, No. 90 Civ. 2518, 1995 WL 5792, at *4 (S.D.N.Y. Jan. 5, 1995)). Here, Acacia does not formulate a legal strategy with any of the patent sellers. Instead, Acacia, "in its sole judgment decide[s] to institute enforcement actions . . . [and] reserves the sole right to select counsel, direct the litigation, and to negotiate and determine the terms of any settlement or other disposition." Ex. A, § 6.1. The terms of the contracts, therefore, preclude any common legal strategy and provide Acacia with total discretion in prosecuting infringements.

## CONCLUSION

The communications between Acacia and the third party sellers are not protected by a common interest privilege. Such materials are, therefore, discoverable and Acacia is directed to comply with Microsoft's request.

Dated: New York, New York
      November 17, 2014

SO ORDERED

_____
PAUL A. CROTTY
United States District Judge