# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| DELAWARE DISPLAY GROUP LLC and INNOVATIVE DISPLAY TECHNOLOGIES LLC,<br><br>               Plaintiffs,<br><br>   v.<br><br>LG ELECTRONICS, INC.,<br>LG ELECTRONICS U.S.A., INC.,<br>LG DISPLAY CO., LTD., and<br>LG DISPLAY AMERICA, INC.,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 13-2109-RGA<br>)<br>)  **JURY TRIAL DEMANDED**<br>)<br>)  **REDACTED PUBLIC VERSION**<br>)<br>)<br>)<br>) |

## LETTER TO THE HONORABLE RICHARD G. ANDREWS
## FROM BENJAMIN J. SCHLADWEILER REGARDING
## DISCOVERY DISPUTE

 

                                                                                                                                                                                                                                                                                                                                                                                                                                                                                       

Ross Aronstam & Moritz LLP
David E. Ross (#5228)
Benjamin J. Schladweiler (#4601)
100 S. West Street, Suite 400
Wilmington, DE 19801
(302) 576-1600
dross@ramllp.com
bschladweiler@ramllp.com

*Counsel for Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., LG Display Co., Ltd., and LG Display America, Inc.*

Enclosure
cc: *via hand delivery to The Honorable Richard G. Andrews*

Dated: June 27, 2016

ROSS
ARONSTAM
& MORITZ
LLP

100 S. West Street, Suite 400 • Wilmington, DE 19801
Telephone 302.576.1600 • Facsimile 302.576.1100
Benjamin J. Schladweiler
bschladweiler@ramllp.com

Re: *Delaware Display Group LLC et al v. LG Electronics Inc. et al*, C.A. No. 13-2109-RGA

Dear Judge Andrews:

IDT's expert reports improperly accuse hundreds of products in violation of prior Court orders. Accordingly, LG respectfully requests that the Court strike these products from the case.

I.     **Products Not Previously Charted by Plaintiffs Should be Stricken From the Case**

The Court's March 4 Scheduling Order is clear: IDT cannot rely on "representative" charts for products that have not been previously charted. D.I. 269, at 3. Yet that is precisely what IDT is doing to accuse over 850 products in this case. Last year, IDT requested that LG be ordered to produce technical documents for all 1600+ then accused products. D.I. 75, at 1-2. In view of the massive amount of time, effort, and resources required to make such a production, LG offered to enter into an agreement regarding representative products. IDT declined and demanded full discovery on every product. *See* D.I. 77, at 2. During the hearing on this issue, LG voiced concern that IDT demanded discovery on all 1600 products but would ultimately only accuse a fraction thereof. Ex. F, 8/10/15 Hr'g. Tr., at 57-59. The Court responded that "a month after [LG] produce[s] the 1600 products, [IDT] do claim charts for the 1600 products." *Id.* at 59:19-21; *see also* D.I. 84, at ¶10. This is consistent with the Scheduling Order requiring IDT to produce a "claim chart relating *each accused product* to the asserted claims...." D.I. 19 (emphasis added).

In October 2015, IDT provided claim charts for roughly 585 products ("Charted Products") and asserted that the charts also applied to a majority of the remaining accused products ("Uncharted Products") based on similarities in model numbers.[1] For example, IDT asserted that the claim chart for LP133WX2-TLCA also applied to sixteen additional LCMs "given the similarities in their model numbers." Ex. E. IDT later asserted that its unilateral designation of Uncharted Products was supported because the Charted and Uncharted Products share a BLU. *See, e.g.,* D.I. 176, at 1, Ex. F. As IDT is aware, similar numbers do not mean the same BLU.[2] For example, the BLU in the LP133WX2-TLCA claim chart is not the BLU for any of the additionally listed products. *See* Ex. G, Correlation Letter, at Ex. A, row 81. *See id.* at rows 27, 81 Thus, IDT's use of a single chart to allege infringement against multiple products is not supported by the facts nor condoned by the Court's prior orders.

Following IDT's January supplemental infringement contentions, the parties filed a status report wherein Defendants addressed IDT's improper reliance on charted products as representative of hundreds of uncharted products. IDT's charts included statements such as "This chart further covers any substantially similar LCMs, including but not limited to the following LCMs with substantially the same model number: [List of LCMs]." *See, e.g.* D.I. 251, at 4. In response, the

---

[1] This discussion does not involve the stricken "cartoon" charts, for which there is no dispute.
[2] Indeed, even where two LCMs do share a core BLU, they may otherwise have meaningful differences that require each LCM be analyzed individually against the asserted claims. *See* Ex. K, Non-Infringement Expert Report Excerpt.

Court issued a Scheduling Order stating, "[n]or can Plaintiffs rely on 'representative' charts for products that have not been charted." D.I. 269, at 3; *see also* D.I. 269, at 2-3 (stating that the universe of accused LGD LCMs is limited to "previously charted" products).

In view of the foregoing, IDT's conduct violates the Court's orders insofar as IDT continues to accuse products outside of the Charted Products. *See, e.g.*, Exs. H-J (Letters to IDT regarding accused products). IDT improperly asserts that both Charted and Uncharted Products properly remain in the case, relying on the Court's statement at the November 2015 hearing that the case would proceed on the 5,000 charts IDT had done. *See* Ex. K, 11/24/15 Hr'g Tr. at 22:4-14. But the appropriateness of representative products, an issue dealt with in the March 4 Scheduling Order, was not addressed at that hearing. As shown herein, IDT's position relies on an unsupported designation of representative products and must be rejected. Moreover, IDT cannot now unilaterally choose to proceed on representative products in order to save time, effort, and costs when it previously rejected LG's request to enter into an agreement for representative products, which LG proposed in order to avoid substantial time, effort, and costs in the collection and production of extremely voluminous documents on all of the products.[3] Exhibit A lists the products accused in IDT's expert reports that are not Charted Products.

II.     **Products that Violate the Court's Prohibition Against Representative Products**

As set forth above, the Court prohibited IDT from using representative charts for products that have not been charted. D.I. 269, at 3. However, IDT's experts rely on charted products as being representative of hundreds of uncharted products. *See, e.g.*, Ex. L, Excerpt of Infringement Expert Report                                                                 . Indeed, IDT's experts are relying on the exact same representative claim charts that were served in January, regarding which the Court issued its prohibition against the use of such charts for representative products.

Again, IDT's assertion that the use of representative products is proper is wrong because the charted and representative products do not necessarily share a BLU.[4] Specifically, as noted above,                                                                 In such instances, IDT needed to use the first 15 digits of the LCM model number (instead of 12) in order to correctly identify the correlation between BLU and LCM. For example, TD-10 purports to chart LP156WH3-TPS1 and asserts the chart also covers, *inter alia*,                           Ex. N, at TD-10.                                                                                             Ex. G, Correlation Letter, at Ex. A, rows 471, 551.                                          *Id.* Although the teardown presented at TD-10 can only possibly represent a single BLU, IDT asserts infringement against representative products as though both BLUs were charted.

Plaintiffs should not be permitted to rely on representative products in violation of the Court's

---

[3] It is also clear now after investigation of the differences among products that representative products are inappropriate for this case particularly given the specificity of the asserted claims.

[4]                                                                                                                                         Ex. G, Correlation Letter, at Ex. A, rows 116, 44.

Scheduling Order. A list of products that Plaintiffs' expert has not torn down and charted, but rather relies on 'representative' charts for infringement, is attached at Exhibit B.

IDT also violates the Court's Order by relying solely on annotated excerpts of a BLU CAD file (not actual LCMs) to represent infringement by over 500 LCMs. *See, e.g.,* Ex. O. Such excerpts, which are not claim charts, are insufficient to establish infringement by the LCMs as they do not even purport to show several claim limitations. Indeed, IDT previously told the Court that the BLU CAD files ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ – underscoring the fact that Plaintiffs' tactics here are mere harassment. D.I. 75, at 2; *see also* Ex. K, 11/24/15 Hr'g. Tr., at 15:3-5 (stating that the CAD files do not show deformities). Thus, it is improper for IDT to accuse any products for which the only evidentiary support is a CAD file and these products should be stricken. Exhibit C contains a list of such products.

### III. Newly Purchased Demonstrative Products

IDT's expert stated that he intends to rely on newly purchased products that are allegedly "duplicates" of previously torn down LCMs.[5] *See* Ex. L, Expert Report at 265. The introduction of new evidence following the close of fact discovery is improper. Moreover, it violates the Court's March Order that "infringement contentions and teardown-based charts are through." D.I. 274. Although the newly purchased LCMs are allegedly "duplicate," they are nevertheless new evidence, which would require additional inspection, particularly in view of the fact that IDT has provided no evidence regarding duplication (which is unlikely given the used, repaired, refurbished nature of IDT's existing evidence). Indeed, given LG's prior inspections of IDT's products, as the Court is aware from the two prior discovery hearings, IDT's actions are done in attempt to remedy the fact that the previously torn down LCMs were unauthorized, second-hand and not authentic. Moreover, the addition of newly purchased products is prejudicial at least insofar as it imposes on LG the undue burden of having to perform multiple inspections having first learned of this in IDT's recent expert report. LG should not be put in a place in which it must expend unnecessary additional resources as a result of IDT's poor decisions and IDT should not be permitted to sandbag on this issue knowing full well LG's position on IDT's use of unauthorized, second-hand, and inauthentic products for many months. IDT's newly purchased products also violates the Order regarding production of purchase documentation for each charted product. D.I. 285. LG expended significant resources on third-party discovery to uncover the fact that IDT's existing products were sourced through unauthorized channels and were often used, repaired, refurbished, scrap, etc. LG would be prejudiced by the addition of products at this stage because the Court has prohibited further third-party reseller fact discovery – which is likely the impetus for IDT's current tactics. Accordingly, LG requests that IDT be prohibited from relying on newly purchased products in its expert reports and/or at trial to establish infringement.

For all products addressed in this letter, LG also requests that the Court permit it to file a motion to recover fees and costs for having to respond to expert discovery and engage in this discovery process on these products following LG's repeated demands that IDT agree to drop the products.

---

[5] IDT's expert asserts that the products are needed because LG's counsel left the product samples "inoperable" after their inspection. That is not so. Any such products were damaged beyond repair prior to the inspections. LG has provided photos to IDT showing the state of the products both before and after inspection. Ex. P.

              Respectfully submitted,

              */s/ **Benjamin J. Schladweiler***

              Benjamin J. Schladweiler (#4601)

Enclosure
cc: All Counsel of Record
  Clerk of the Court (*via hand delivery*)